case. And the plaintiff did such a nice job of announcing the case. Case number 314-0747, Progressive Insurance Appellant Cross-Appellee by Thomas Buck v. Vanessa Dorsey, et al., Appellees Cross-Appellants by Kenneth Newman, Corporation, Appellees Cross-Appellants by Christian Phillips. Mr. Buck, you may proceed. Good morning. Good morning. I replace the clerk. My name is Tom Buck. I represent United Financial Casualty Company, which is also known as Progressive. First, I think I can speak for myself and for counsel, my opposing counsel, that we thank the court for allowing oral argument. We'll see if you thank us after you're done. This case presents a question of liability coverage for a rental car and whether liability coverage is provided under a policy of insurance or by the rental car company that rented the vehicle. I represent the policy of insurance. Or both. Or potentially both. Correct. I represent the policy of insurance that was issued by Progressive to a woman by the name of Melissa Landis. She was the named insured on our policy. It's our position that the policy we issued to her does not cover the use of the rental car because the vehicle was not rented by her, but by Jeffrey Landis, who was separated before the policy was issued. Our policy does not cover a separated or former spouse for his or her use of a rental car. Our named insured did not rent it. Our named insured did not elect to seek coverage under a Progressive policy. Our named insured had nothing to do with the rental car whatsoever. To explain, there are two categories of vehicles under the Progressive policy. One category are vehicles that fall under the definition of a covered auto and the second category are vehicles that fall under the definition of a non-owned auto. And who is insured for those vehicles differs. Where does the replacement vehicle definition come in? Isn't it replacement? There are three types of covered autos. One is vehicles listed on the policy declarations page. The car that was stolen was listed. Correct. It was stolen though during a policy proceeding. I understand. There was also another vehicle listed on the policy, a Volkswagen. Which is not an issue. Correct. The second is an additional auto and I think everyone is in agreement that the rental vehicle doesn't qualify as an additional auto. The question is whether it qualifies as a replacement auto. And under the definitions provided by the Progressive policy, it does not. Because in order to qualify as a replacement vehicle, it must be owned by the named insured or leased by the named insured on a long-term basis, six months or more. And this lease was for three days. It was rented on the 21st of January, three days before the accident by Jeffrey Landis, who had moved out of the named insured's household three months before. And in fact, he rented it the day after their divorce was official. So he had no connection with the household at all, either by being a non-resident spouse, and he was a former spouse by that time. So it's our position that the rental car doesn't qualify under a covered auto. So the question is, is it a non-owned auto? And it is. A non-owned auto is a vehicle that's not owned by the named insured or resident relative. The vehicle was owned by Hertz. It's a non-owned auto. So then we go to the policy and we ask, who is insured under our policy for the use of a non-owned auto? In other words, the rental car. And the folks who are insured are the named insured and any resident relative, any relative residing in the named insured's household. That's it. So if Melissa Landis had rented the vehicle, she would be covered? I know where you're going with this argument, and the argument is that because of the divorce, the day the car was rented for three days, he was no longer married. But I'm wondering if that isn't a red herring issue. If you assume that they are still spouses, then the non-owned vehicle still wouldn't have allowed this minor to drive the car. Really, the critical factor is that he was a non-resident of the household. So he could have still been married on the date of the accident. Okay, let's assume that they were married and he was living with her. Would the policy have covered the non-owned auto driven by a minor with the husband's permission? It would have covered Jeffrey Landis for his negligent entrustment, his use of the auto. It would not have covered the driver. And that's a case called State Farm versus Enterprise. Yes, all right, all right. So are you opposed to covering Jeffrey? What did you just say about for his negligent entrustment? Takena Dorsey, the operator of the vehicle, was sued for negligent driving. Jeffrey Landis was sued for negligent entrustment of the rental vehicle to the driver. And you think, let's assume he was still married and still living in the home, and I know those facts are not the facts of record. Would you have to cover him under those circumstances? He, as a resident spouse, would be named and insured under our policy and covered for the use of a non-owned auto. But he wasn't. So he would have defended him for negligent entrustment under that? If he was married and if he was residing in the house. Under that hypothetical, because it is a hypothetical. Yes. It's not the facts of this case. Correct. So you still are not insuring her as the driver, but only him as the person who handed her the keys? Under that hypothetical, that's correct. All right. Because that's why it's so important to you to argue the facts that he's not in the house. All right, I understand. I mean, that's really the critical factor. If someone's not residing in your household, he would be insured if he had been using Melissa Landis' VW. That was listed on the policy. Because he would have done so with her permission. Yeah, and it would have been a covered auto. But our policy, Melissa Landis' policy, doesn't recover the former spouse when he goes off, leaves someone where else, and rents a vehicle on his own. Now, the trial judge found that the policyholder has a duty to inform the company of changes in status. But I'm wondering if the definitions in your policy, you know, the definitions are so, what do I want to say, all-encompassing, that a person's status just changes. His status changed so that he's no longer covered. Well, his status, as when the policy was issued, he was not residing in a named insurance household. Okay. So when the policy started, he wasn't covered. And the trial court found that she had to tell them. Okay. And he analogized it to a rescission case. But those issues weren't pled. Pardon? Stockpile and those issues were not pled. They were not pled. All right. And the ruling in the court was based upon preclusion for failure to inquire. Although the policy, both the policy preceding, both the policy in effect at the time of the accident and the policy which preceded it had a clause in there which asked to be insured to notify the company of any change of residents, household members, and operators, and specifically marital status. So again, return to your argument about why you think the trial judge's ruling on summary judgment against progressive was in error. Okay. Actually, the trial court's ruling was on an agreed statement of facts. So it was, in essence, a bench trial. On a declaratory action. On a declaratory action. The trial court, this is where we differed. The trial court concluded that we had denied coverage based upon a failure of either Jeff Landis or Melissa Landis to advise us of the separation and divorce. And then the trial court also concluded, based upon the Heights decision, that there was a duty to inquire before the accident as to the change of marital status or residency, and we had failed to do so. And at the risk of repeating myself, we didn't fail to ask in the sense that the policy did ask to be insured to let us know about changes in residents and operators and their marital status. But more importantly, our coverage denial was not based upon concealment or failure to disclose information at the time of application. It was based upon the facts of residency, not only at the time of accident, but also at the time the policy was issued. And that's why we cited to the Godwina case. The court relied on a rescission case. We don't believe this is a rescission case. We believe this is a resident case, whether a resident qualifies as an insured based upon the facts as they were presented at the time of loss. In a rescission case, you could have a resident who qualifies for coverage, but the insurance company argues you never told us they were a resident when you applied for the application. Therefore, we're going to avoid the policy, even though had you told us, you would have been covered. That's not what our position is. Our position is at the time of loss and also when the policy was issued, based upon the fact that Jeff Landis had left the household, had separated from his spouse, he doesn't qualify as an insured person for use of a non-owned auto, regardless of application. So we view our case as one involving insured household members, not one of rescission. So that's where we differ with the trial court. And that's what we've asked the court to review. At the time of the policy and in fact at the time of the incident, Mr. Landis was not a named insured or covered insured in the policy whatsoever. Correct. In other words, his name won't be there. He does not qualify as a named insured because Melissa Landis was listed on the declarations as a named insured. And he would have qualified as a named insured had he still been the spouse residing with her. I understand that. But he's not a named insured when the policy was issued on the date of the accident because he wasn't residing in that household and he was no longer married. Well, a named insured is a name that's on the contract. A covered insured is someone that's in the language of the contract with qualifications. Correct. He doesn't qualify under the terms of the policy itself because he's not a resident relative. He's not a resident spouse. But he's never been a named insured. Well, actually not a named insured listed on the declarations page. That's what the named insured is. Yes. No, he was never listed. It's linguistically very simple. I'm sorry. He was never listed as the named insured on the declarations page. But when the wife, or ex-wife, when she tried to change him then and have him removed, the company said, well, we're going to require a signature from you, from this ex, before we can remove them. And so, you know, a lot of times in contentious divorces, those things are without. From what you're saying is that they weren't going to remove any language that included him until she had a signature from him. So, I mean, if back in October, apparently when he moved out and said they no longer lived together, was she supposed to do that then? But then what if she couldn't get a signature? What would have happened then? Well, what Progressive asked for was her signature, you know, his verification, and then either his signature or the last known address for him. So Progressive could notify him. And it's not stated in the record. Well, now I come back to this question because I haven't seen the contract, okay? Was he named insured in the contract? No, he was not. Well, then why do you need any of that? Because you're saying that... Well, he was listed as a driver on the declarations page. Okay. But just because he's listed as a driver does not... Put him in an insured status. Correct. He still has to qualify under the terms of a policy for the particular coverage he's claiming. He has to qualify, but the vehicle doesn't have to qualify. Is that the point you're trying to make? It has to be an auto that's insured by the policy, and the individual who's being sued has to qualify as an insured. So there are two components to it. Covered, a non-owned auto. Does this person using that vehicle qualify for the use of that vehicle? Why do you have named driver in your policy? You know, it's very typical to list the household residents who are drivers. Why do you need that? It's just the information that's on the page so they can see who's... But you're saying it's not controlling. No, it's just simply an informative type nature, and it doesn't grant them any greater rights of coverage than anyone else under the policy. I'm just saying that seems... But you understand my argument. Well, it's also... Right. But it's also based upon... It's also based upon... Here's who we understand to be residing in your household, so this is what we've adjusted the premium based upon. So it's for rating purposes. Primarily. And that's also primarily for the request of the... Notify us if folks have been removed from the policy or have not been, or more people have been added to the household, or more people driving so they can adjust... For rating purposes only. Yes. Okay. As a list driver, he could drive a rental vehicle and be covered, assuming he was living in the house and still married, or divorced and living in the house. No, he has to be both living in the house and married. He has to be a resident relative. Correct. I'm troubled by the fact that he wasn't driving. So why do you have to cover his criminal act of allowing an unauthorized person to drive? You can't hand the keys to a minor. That's a criminal act. Under your policy, why is the argument being made that your policy covers that? Because he was not driving. No, I'm not necessarily saying he covers that. Before we get to exclusions for intentional acts and so forth, you have to determine whether the individual qualifies in the first instance as an insured person, and he doesn't. So as far as we are concerned, the analysis stops there. And that's what you presented in your deck action? Correct. That issue and that issue alone? Well, the issue that he and she is not, the driver is not covered for liability coverage for their use of the rental vehicle. Well, I mean, that's the whole purpose of your deck action, is to get away from that law school. That's correct. I mean, that's what the four corners of the complaint alleged, his negligent use, his negligent entrustment. His only negligent entrustment. Correct. Okay, that's the only tort. That's correct. So based upon the four corners of the complaint, we have to file a declaratory judgment to establish no duty to defend that case. Based upon his status. Correct. Based upon the allegations as plied in the tort action part. One minute warning. I just had a question about the residency. I know the parties were in a divorce proceeding. I don't know exactly when that was filed. Judgment was entered on the 20th of January, 2004. There's this statement about they had actually separated in 2003 in October. Other than the language that's in the divorce petition and the judgment, what other evidence was there of where he lived then? It doesn't sound like there was any legal separation. There were stipulated facts to which all the parties agreed. And that was in the body of this case that he had. He wasn't residing there. He changed his driver's license. Had he done any of these things, or he said, you know. Yes, correct. On page C1350, stipulated fact 23. After October 2003, Jeffrey Landis did not reside with Melissa Landis at 866 South Myrtle Avenue, Kankakee, Illinois. So, in other words, that's where she was residing. And he did not reside with her from October 2003. I assume until today, but certainly through the day of the accident. The address that you list in the stipulated facts is 5802 Aspen Drive. Yes, that's where he was last known to be residing. Isn't that the address he used on the Hertz contract? No. It's okay. I'm sorry. Right. I was just trying to. There was something I didn't know if he had changed the driver's license or if it was something else. Because I didn't know if it was just his intent to permanently reside somewhere else that is required, or if it is something more in the nature of a. Judge, I think that is stipulated. In fact, it's later stipulated that they were not residing together on the date of loss or after he had separated. Okay. At the time, when is it important from your standpoint that you have to have two qualifications? You have to be a relative and in residency. Is that correct? That's correct. Okay. When does the being a relative status change? I think it changed in October 2003. I'm sorry, the relative status? Yeah, yeah. I mean, when does he cease becoming a relative? When does he cease becoming a spouse is on January 20th of 2004. Which is? The date that the divorce decree was entered. The date of judgment. The date of judgment. That severs the relation. Correct. Okay. So is residency even important at that point? No. But if someone would argue he should have been a resident at the time that the policy was issued. See, the policy was issued on the very same day. So arguably, maybe it was issued at 12 or 1 a.m. and the judgment was entered at 10 a.m. So a period of 10 hours, perhaps, is relevant. If that answers the court's question. Because the act of negligent entrustment is the operative time. It doesn't occur until after that. It occurs sometime after January 21st when he rents the vehicle. Okay. Is that my minute? Okay. Thank you. Thank you, Mr. Buff. Mr. Newman. Thank you. May it please the court. Your Honors. My name is Kenneth Newman and I represent Vanessa Dorsey and her parent and next granddaughter, Taisha Dorsey, Tainima Moss, and Larry Dorsey. We did file the underlying lawsuit alleging negligent entrustment by Jeffrey Landis and negligent driving by Tequila Dorsey. It's our position that the trial court correctly found that the progressive coverage applied here. The progressive policy ending in Dash 4, which was the one that was in effect immediately prior to the one that became effective on January 20th, was issued when Jeffrey Landis and Melissa Landis were married and living together. It listed Jeffrey Landis and Melissa Landis as drivers and the Ford Explorer as a covered vehicle. That was Mr. Landis' vehicle that was later destroyed. When progressive paid for the loss or the theft of that car, it was under that house? It would have been under Dash 4, correct. Okay. As kind of the questioning went with Mr. Buck, I don't think there's any dispute that if the subject accident happened a few days after the policy Dash 4 had been activated that Jeffrey Landis would have been covered for the use of the rental vehicle as we argued. I think what the trial court correctly found was that pursuant to the holding and preferred risk mutual versus heights, Jeffrey Landis was considered to have the same coverage under policy ending in Dash 5, which was issued on January 20th of 2005, on the date of the accident, which was January 23rd, 2004, that he did prior to any separation from Melissa Landis. Well, what separation doesn't change the relative? I don't get the separation. Your relative status ends upon judgment of divorce. Right, but I think the argument, there's a two-part argument being advanced against us, one being they were divorced at the time of the accident, but the other almost that doesn't matter because he was out of there in October of 2003. Okay, so he didn't qualify on the second form of residency. That's the argument, and that's what I think the trial court was getting at when it said because there was no inquiry as to change in circumstances when they issued the offer of renewal, which would have been around Christmas in 2003, that he's entitled to the status that he had. When you're talking about inquiry, what is your understanding of inquiry? If there's a question in the offer of renewal, has there been any changes? Specifically as to marital status, residence, address, anything like that, it would really not be a difficult thing to do instead of just blindly sending out the renewal offer to make a basic cursory inquiry as to is there anything different that might affect our risk in continuing to insure these people. Well, consumers don't know that. They're not insurance lawyers, come on. You know, they just know, the only thing they look at is premium when it's due. Exactly right. What you're saying is that the offer of renewal for the prior policy had no question or like some do have a series of questions that go to coverage issues for rating and potential exposure by the insurance company. Correct. Anyone under 18, blah, blah, blah. Have there been any changes since or whatever? Or like in the preferred risk case, has your license been suspended or something of that nature. Right. But this offer of renewal by Progressive had none of these questions. Right. Okay. So, you know, if we go to, if we use the proposition that he has the same rights as he had at the time the Dash 4 policy was entered, if you go to the Dash 5 policy, which was issued on the date of the dissolution, as we previously discussed, and I know it was kind of a little bit of a joke, but I was going to argue that this policy was issued effective 1201 a.m. on January 20th of 2004, at which time the Landeses were still officially married. Really? And on that policy, it only lists the Ford Explorer, which was the Landeses vehicle, the one that got destroyed and everything. It doesn't list any other vehicles, but it does list, under listed drivers, Melissa Landes and Jeffrey Landes, both as drivers. So it was also my position that, you know, in a way to distinguish this a little from what happened in Godina, you know, there, he's, I didn't see any evidence that he was listed as, he certainly wasn't named insured, but I didn't even see anything that he was listed as a named driver or anything, or at all. And therefore, the only way that he could get coverage for his UIM claim would be as a spouse, and the court found that he didn't, he wasn't. But in any event, in this case, I think having him named as a listed driver actually gives him additional status as a covered person, independent of his relation, relative status, spouse, or not a spouse. Okay, so tell me, assuming that's true, how does it cover a rental vehicle, the pass? Because if he's, if he's got the coverage under the policy, then it would apply to any vehicle that he rents, and he would be entitled to rely on his progressive policy when he goes to rent the car and decline the rental car coverage as he did. He would be covered for what Mr. Buck described as a non-owned vehicle, which would be the rental car. So you're not arguing this was a replacement vehicle either? I don't know why I was so focused on it after reading the briefs. Well, I mean, we do note that the Hertz page that was created at the time of the rental calls it a replacement vehicle, and it was a replacement. But what is your position? Why do you think you were entitled to the declaratory judgment? Because it was a replacement vehicle or because it was a non-owned vehicle? Both. It was a non-owned replacement vehicle, essentially. Well, I think the definition of a replacement requires ownership, so you're mutually exclusive, but I appreciate your gaming. The term replacement, as I understood it in the Hertz contract, is something that the insurance company was covering. They were going to cover the rental fee because it was being used as a replacement for a covered vehicle that had been in an accident. And it's often the time you have that additional insurance and you need some coverage. If your car breaks down or if you're in an accident, you get a rental vehicle as part of your coverage. In addition to it being the coverage under your policy extending to the rental vehicle once you have it, they're going to pay the fee for the rental vehicle to Hertz. And it's my understanding it was listed as a replacement vehicle because you have replacement coverage. They're going to pay the $35 a day or whatever the contract fee is. Mr. Buck and Professor May have said, well, if this wasn't a replacement vehicle for the Ford Explorer, there was coverage so that you're using it while you're having a vehicle fixed, at least they're going to pay the premium. So there can be two or three different, as I understand it, definitions of that term. It doesn't have to necessarily mean because you are buying that car to replace another, correct? Well, that's my, yeah, my position is it doesn't, there are other ways to obtain a, you know, whether it's a temporary replacement or permanent replacement. It sounds like there was, you know, they're talking about a permanent replacement in Mr. Buck's argument with the progressive policy. But I don't think, as you said, that that's the only possible definition of a replacement vehicle. Well, we don't have any of that here, don't we? We have a guy going to Hertz to rent a car for, of course, we don't speculate why, the day of his divorce, and hands the keys to a 15-year-old. And so now we've got a lawsuit of negligent entrustment against him and he's looking for coverage. Right? Right. Depends. It's a pretty simple case, isn't it? I mean, in terms of the overall... He's not looking for coverage, you're looking for coverage. I'm looking for coverage for both Landis and Tequila Dorsey. But you're representing the Dorseys. I'm representing the Dorsey siblings who were injured. You're not representing him. You didn't file a declaratory action on behalf of him. You are absolutely correct. The Ford Explorer that he was going to receive and that was listed under the policy was stolen and wrecked, which led to him coming to Hertz to rent a vehicle. That's my understanding. But it wouldn't matter either way. Your argument is, don't characterize it, it is a non-owned vehicle. Right? The Hertz vehicle? Yeah. I can't argue with that. Maybe that's what you're saying, is he covered for non-owned vehicle. Correct? Right. And by implication, is she. Sometimes I confuse myself sitting up here, which is why you may not be happy to be here when you leave. You filed a lawsuit against Mr. Landis for negligent entrustment. Am I right? Yes. Okay. So, I'm also confused how the mother of these children... Did you name Tyesha in that lawsuit as well? Tequila Dorsey is named as a defendant as the driver of the vehicle. Sued by her mother. Well, sued by... Right? Representing her mother in that case, who's suing her daughter on behalf of other children. Correct. Is there a conflict there? Maybe you don't want to answer or can't answer or you can politely tell me it doesn't matter. Politely tell me it doesn't matter. All right. I appreciate that. But this is how I confuse myself sometimes when I'm on the bench. All right. Thank you. Mr. Sullivan. Please report. Good morning. Good morning. My name is Christian Sullivan. I represent Appalachian Cross Propellant and Hertz Corporation. I won't belabor the points, even though I mimic what Mr. Newman said regarding my position as to the court's ruling on progressive policy. I think what's significant in this case is the facts surrounding the acquisition of the vehicle. And that is that in the record, actually, Tequila Dorsey testified in the record at C319 to 321. She's very specific about how she acquired this vehicle. She was... Is that her deposition testimony? Yes. It's in the record at C319, C321. She specifically says she was his dope dealer and they had an agreement before they even went to Hertz that because he owed her money, she was going to, he was going to rent a car and trade it out for drugs, specifically at page 321. She was asked, do you have any kind of agreement with Jeff to do this? She said, what was... She said, yes, I did. What was that agreement? That if he gets something from me, I can get the car for a couple of days, a couple of hours. Question, so from the time Jeff got the Camry in June, January of 2004, did you have the Camry in your possession up until the time the accident occurred? Answer, yes. So during that time, you were supplying Jeff with what he wanted. Dope. Answer, yes. So I think we argued the contract itself does have an explicit exclusion for criminal conduct. And the court, our position is of course that in 2009, the court was incorrect in casting aside our contract defenses. But this really is a contract that should be void ab initio as a matter of public policy. This contract itself was the product of a criminal enterprise, that being the trade of illicit drugs. And if it is void, doesn't your statutory requirement kick in? Well, I would argue it does not. And I admit there's no case exactly on point for this. But there are circumstances, and there have been cases that have held, that the statutory requirement is not without exception. There are some times when the statutory requirement does not apply. And you're arguing it applies in this case because the driver who got the car from the person who rented the car was engaged in criminal activity. That's correct. And the person who rented the car was unlawfully entrusting it. That's correct. The whole transaction itself was the product of this agreement between Mr. Landis and Ms. Dorsey that he would acquire the car for her. She was actually at the dealership, or hers, with him. To fortify that argument, there's a public policy argument about when people are injured, somebody's got to pay. But the people that are injured are the siblings of the person who drove the car. That's correct, Your Honor. Not just innocent members of the public. That's exactly right. And this is a horrific accident, I understand. It is indeed, but it's a single car accident. And the case law talking about the purpose of the minimum financial responsibility law is that the driving public should be protected from drivers of rental vehicles who don't otherwise have any insurance. So when we talk about public policy, we have the mother of the 15-year-old drug dealer who is suing her. And her daughter. And her own daughter. And her own daughter, the driver. So I would argue, and I'm arguing based on that there is precedent for disallowing even the minimum liability law, putting aside the primary-secondary argument, which is my alternative argument, which is in fact what the trial court ruled. But as I argued in the Fogel v. Enterprise leasing case, the trial court and the appellate court, First District, 2004, said if there's a misrepresentation by the renter at the time he enters into the rental contract, it can void. In that case, he misrepresented that he had a valid license. He had no other license. He presented a fake California license. And they said the whole policy was void as a matter of law. And in that case, he actually had bought insurance, unlike Mr. Landis, who declined any coverage at all that was offered by Hertz, the optional coverage. And they said that is void as well as the minimum financial responsibility statutory obligations are void. And I think that applies here. There is case law that says as a matter of public policy, you can have, if the contract itself is a product of a criminal enterprise, it's injurious to the interests of the public, contravening some established interest or violates morals, the contract itself can be void ab initio. And I think that really is what applies here. I mean, what can be more violent of societal morals than to dupe a rental car company into acquiring a vehicle to trade for illicit drugs? I mean, that's exactly what we have in the record in this case. So I think not only was the trial court incorrect in rejecting arguments under the contract, including the criminal use of the vehicle, but that… There's actually two policies at work here, right, that compete? Sure. I believe that we've got your own vehicles out there on the highway that do not have to have the minimum liability coverage. If indeed the driver, the person renting it, violates the terms and provisions of the contract that you have drafted. That's correct. But in this case, I think it's beyond that. It's so egregious that it should vitiate the whole contract. It is a unique situation. We're not talking about… I'm aware of the Hertz v. Garrett case that says you can't simply… Just because he's intoxicated, you know, you can't preclude coverage as Hertz, the rental car company. But this is beyond simply… And the reasoning in that case was that you can't impose extra liability on someone for driving intoxicated because there's already penal responsibility or obligations or penalties. Well, that's a criminal act too. Right, but… For driving intoxicated. It is, but that's after the fact. That's not even the inducement of the contract. Because in the Garrett case, the wife rented it on her own. No indication whatsoever of anything untoward at the time of the actual rental. In this case, we have testimony in the record that the whole transaction itself was devised for the purpose of this criminal transaction. So that's why I say it should… The whole transaction was devised because the husband, ex-husband, was setting himself up as a strong man. The minor couldn't enter into the contract. Had she presented herself, Hertz would have said no. Absolutely. He put himself in a position, regardless of the reason, to provide a car to a minor. True, but I think the reason is significant when it comes to the public policy that I think rises to the level that it should void the contract. Counsel, can I ask one more minute? Thank you. Why is that? Why is it that… I mean, is it more dangerous to the general public to have intoxicated drivers? I think the timing is significant. I'm not saying it's necessarily more dangerous to have an unlicensed, unauthorized driver, drug dealer driving a car. But it was at the time, and even before, this agreement between Dorsey and Hertz was before they entered the contract. So the contract itself has no legitimacy in my view. Alternatively, I would like to point out that should the court find that there is no coverage, of course, the Supreme Court on October 8th did cap the liability. So that's set in terms of the minimum. There's more than one injured person. We know it would be capped at $100,000. I don't think that's applicable. And, of course, I mimic the arguments regarding progressives' coverage. And the primary and secondary law is well established. It's not simply excess, like excess insurer. If there is found to be coverage under the progressive policy, there is none, even the minimum financial responsibility for the renter or even the successive permissive user, Ms. Dorsey. Say that again. There isn't any statutory requirement? If there is progressive coverage, there is no statutory requirement. That's what all the cases I've cited, including FOBO, State Farm v. Hertz Claim Management, Farm Bureau Mutual Insurance v. Alma Rent-a-Car. All these cases say the rent-a-car company is entitled to rely on the election by the renter if he has insurance, not to use any and, therefore, provide none. Because it's a minimum. If his is available, there is none available. Only if there is absolutely no other available and there is no public policy that would otherwise vitiate the contract, then the minimum financial picks in. One last thing I wanted to say, if I could, about successive permission doctrine. I think it applies to insurance companies under the Wilcoxon case. If Landis is a named insured, if he gives, whoever he gives permission to, successive permission would also bind the insurance company. That was cited by both Dorsey and me in the brief. And in conclusion, I simply would say, if I request that the court reverse the 2009 ruling regarding denial of my client's summary judgment motion and alternatively that they affirm the finding that progressive owes coverage and hurts does not based on the primary and secondary liability argument. And that was another point I was confused on in the record, how the July 31st ruling seems to contradict the March 21st 2014 ruling. Do you agree or am I mistaken? I don't think it actually contradicts because his ruling in the later ruling is based on the primary and secondary doctrine. Which is, because he found coverage under progressive policy, there is none for hurts under the cases I mentioned in my brief. But you're saying if progressive is found by this court not to be providing insurance coverage, you want to make sure that hurts doesn't have to be. And that's your argument. Right. And so I would think to get to hurts, you have to overrule any argument regarding voiding the contract as well as finding there is no coverage under progressive before you get to the statutory requirements. And if you get to hurts, then your argument is twofold. If the statutory liability applies, there are limits, but it should not apply because the contract at the inception was void. That's correct. I appreciate your input here. Thank you. Thank you, Mr. Sullivan. Mr. Buck. Thank you. Just two quick points. I just want to explain the payment for the loss of the Ford Explorer. That was done pursuant to the policy that was in effect before the policy. And it was comprehensive coverage. And the Ford Explorer was listed on the declarations page, so it paid for the loss by theft of that vehicle. And the payment of that loss had nothing to do with residency or marital status whatsoever. And the rental reimbursement kind of goes hand in glove with the comprehensive coverage. Yet the court found that to be a very important reason to rule against progressive. It noted that. I wanted to explain why that has no relevance or why it's not really a factor here. If you look at the rental reimbursement, and you can find that on page 1403 of the record, it will reimburse for the rental of a vehicle that's used because another vehicle has been covered by comprehensive coverage. It has nothing to do with residence. That's not any type of admission or finding of coverage for rental reimbursement. It has nothing to do with the residency of Jeff Landis before or after.  It's pure property damage. It's like roadside assistance. So it's separate and apart from liability coverage. Rental reimbursement does not provide liability coverage for any vehicle. Just a couple of points I wanted to make with respect to Hertz's argument. Hertz is arguing before the court today that the contract should be rescinded based upon misrepresentation. Well, there was never even a cause of action for rescission pled in the declaratory judgment action for that relief. That came up in written briefs. So that's never been addressed. That's never even been pled. The other point I want to make, the second prong of their argument is that when titles were- So I understand procedurally where, but Hertz's view that's being presented up here at this time was never part of the deck action? Never pled as a cause of action. Right. It never pled that Jeffrey Landis went into that rental office and said, I'm renting this for me only and not for a 15-year-old or any other misrepresentation. It was never pled. The other argument is liability coverage should be voided based upon the exculpatory clauses that they've cited in their briefs. That was pled. The exculpatory clauses was pled. But just the general rule on that is that an exculpatory clause will not be applied when you have a third-party liability claim and when it affects mandatory minimum financial responsibility. In those circumstances, an exculpatory clause will be void as against public policy. That's part of the Garrett case. That's part of the Wilcoxon case. And I think there's one or two other cases that we cited. I think the Vogel case also, and I apologize if I'm mistaken, but I believe that involved the rescission of supplemental liability insurance, not the mandatory minimum financial responsibility coverage that was required. It only applied that rescission was allowed on an excess basis. But I apologize if I'm not recalling the facts of that case correctly. So in this case, you know, they will apply an exculpatory clause in a first-party case. So if you're injured in an accident, you're the driver, and you're intoxicated, and they say, well, we're not going to cover you for your first-party claim, be it med pay or uninsured motorist coverage because you were drunk, they'll enforce that exculpatory clause. But when it comes to an innocent third party, they'll void that exculpatory clause to allow at least the minimum financial responsibility. Just to conclude again, our position is that since Jeffrey Landis was separated and divorced from the named insured, the progressive policy doesn't cover that rental vehicle. So for that reason, we've asked the court to reverse the circuit court's judgment entered against United Financial and ask that you all enter it in favor of us. One more question. Was Tequila claiming that she was injured and hoping to be covered for her injuries? I don't believe that. I think that the only issue as to her is whether there's liability coverage. And I know the panel agrees that you all three have done a fabulous job of demonstrating what applying lawyering is all about. Thank you. On behalf of all of us, thank you. Thank you for hearing us. Mr. Newman? Thank you again, Your Honors. I guess the main point I'd like to make is there really is no evidence of specific misrepresentation made by Landis at the time of the rental. There's no evidence that he said anything about himself at the time of the rental or told him what the rental was for or that in any way he wasn't a qualified renter under the terms of the contract. There's likewise no evidence in the record that Tequila Dorsey had contact with anybody at Hertz at any time, let alone... Wasn't she there? I'm not sure exactly where she was at the time, not any direct contact with them that she was involved in this at all. And then just quickly, the contract specifically sets out a bunch of criminal activities that are prohibited under Section 5E there. And if you get on the list, there's seven or eight of them. There's no evidence that either Tequila Dorsey or Jeffrey Landis did any of the things in connection with the actual use of the vehicle. This was a joyride in the country, nothing else. No drugs being transported, dealt, no contraband, no people being transported for hire, nothing under the prohibited list. One minute. Thank you. So in sum, it remains the Dorseys' position that both the progressive and the Hertz coverages apply to their loss, but in the event that the court should decide that the progressive coverage does not apply, then the Hertz coverage still must apply to the maximum of its limits as primary, for the reasons that Mr. Buck stated in his last argument. You don't disagree that if progressive coverage is held to apply, that Hertz' coverage is not going to be on the table, right? I beg your pardon? If progressive coverage does apply, Hertz' coverage is not going to be on the table. I will say that it's been our position that it's secondary in excess. I will also candidly tell you that it's not my strongest argument. Okay. Do you want to address the supplemental authority added? I mean, doesn't that kind of defeat your argument that the coverage should be the same coverage as under progressive and isn't it limited to the statutory amendments? I mean, given the Supreme Court's recent, yeah, I mean, I know that was an issue, whether it was unlimited or not. Given the October 8th decision, I believe that if the Hertz policy is found to apply, it's 50-100. All right. It's what? 50-100. Okay. Thank you. Mr. Sullivan. Briefly. I just wanted to respond to the concept that somehow my client waved argument here regarding the criminal conduct. I point out that on record at C-9 through C-11, paragraphs 14 through 25 of the complaint, we did plead that Landis did not inform Hertz that he intended to allow an unlicensed 15-year-old girl to drive the vehicle. He did not advise of any other drivers. And the record regarding her testimony, as I mentioned earlier, does say that Landis never drove the car. She was with him and she had it the whole time, the three days from when she bought it to when the record took place. So in terms of the criminal conduct, I think it was ongoing because she acquired the vehicle and continued to use the vehicle as the product of her quid pro quo for drugs. The use of the car was devalued for the illegal drugs, and she continued to use that throughout. And in this case, she was driving her some minor siblings. One of them I think was not a minor at the time in the vehicle, and she didn't hit anyone else. So the minor infraction of her being underage and unlicensed is less significant than the quid pro quo for the acquisition of the vehicle, which is what I argue rises to the level of actual, not rescission, but that it should be void, ab initio. And I don't think that requires us to actually plead a formal cause of action for rescission. And I think the record shows that we did actually put into the record from the pleadings the misrepresentation that took place to acquire the vehicle. So I would simply say that this is before the court properly. I reiterate that should the court find that this contract should be void as a matter of public policy, or that there is coverage under progressive policy, there is no liability for Hertz, as the court found, because the cases are very clear that Hertz is entitled to rely on the renter's election for his own policy to apply. And if so, there is no liability or responsibility for Hertz to even provide the statutory minimum liability. Thank you. Here I go again. Is this case done? Are you guys done negotiating it? I mean, the Supreme Court decision has come out recently. All communication over, and if we decide the case, you guys aren't going to come up with a settlement? It's an 11-year-old case, so I can't say one way or the other. I know at various times it has been discussed, and aside from that, I couldn't say. Well, if you walk out of the door and think that a settlement is going to happen in the next month, would you let us know? Certainly. I can tell you. I'm not aware of anything imminent. Okay. All right. Thank you. Thank you. Thank you, Mr. Spalding. Thank you all very much for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. And right now, these